UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VALERIE D. GILLEY,<br><br>        *Plaintiff*,<br><br>        *vs.*<br><br>CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*,<br><br>        *Defendant*. | No. 1:14-cv-00202-JMS-TAB |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Valerie Gilley applied for disability, disability insurance benefits, and supplemental security income from the Social Security Administration ("SSA") on November 2, 2010, alleging a disability onset date of November 15, 2007. Her applications were denied on January 4, 2011, and denied again after reconsideration on April 4, 2011. A hearing was held on June 11, 2012 in front of Administrative Law Judge Kimberly S. Cromer (the "ALJ"), who determined that Ms. Gilley was not entitled to receive benefits. [Filing No. 13-2 at 15-28.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Gilley has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

### I.
#### BACKGROUND

Ms. Gilley was forty-six years old as of her alleged onset date. [Filing No. 13-5 at 2.] Previously, she had worked at a nursing home in food service and then as a Certified Nursing Assistant. [Filing No. 13-2 at 39-40.] Ms. Gilley claims she has been disabled since November

15, 2007, because of a variety of physical and mental impairments that will be discussed as necessary below.[1] [Filing No. 17-5 at 2.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on July 3, 2012. [Filing No. 13-2 at 15-28.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Gilley had not engaged in substantial gainful activity[2] after the alleged disability onset date. [Filing No. 13-2 at 17.]

- At Step Two, the ALJ found that Ms. Gilley suffered from the severe impairments of degenerative disc disease, fibromyalgia, bilateral carpal tunnel syndrome, sleep apnea, and obesity.[3] [Filing No. 13-2 at 17-19.]

- At Step Three, the ALJ found that Ms. Gilley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 13-2 at 19-20.] The ALJ concluded that Ms. Gilley had the residual functional capacity ("RFC") to perform light work, except she "could lift up to 20 pounds occasionally and frequently lift and/or carry up to 10 pounds. She can stand and/or walk up to six hours in an eight-hour workday and sit up to six hours in an eight-hour workday. [She] can occasionally

---

[1] Ms. Gilley detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. [Filing No. 16 at 2.] Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Gilley, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[3] Ms. Gilley only addresses her fibromyalgia and use of a cane in her appeal, so the Court will focus only on those two impairments.

balance, stoop, kneel, crouch, crawl, or climb ramps or stairs but never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to wetness or hazards such [as] moving machinery or work at unprotected heights." [Filing No. 13-2 at 20-26.]

- At Step Four, the ALJ found that Ms. Gilley was not able to perform her past relevant work as a nurse's aide and dietary aide because that work is categorized as medium to very heavy in exertional demand. [Filing No. 13-2 at 26.]

- At Step Five, the ALJ found that considering Ms. Gilley's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Specifically, the ALJ found Ms. Gilley would be capable of working as an office helper, hand packager, or counter clerk. [Filing No. 13-2 at 27.]

Based on these findings, the ALJ concluded that Ms. Gilley was not disabled and was not entitled to disability benefits or supplemental security income. [Filing No. 13-2 at 28.] Ms. Gilley requested that the Appeals Council review the ALJ's decision, but the Council denied that request on December 17, 2013. [Filing No. 13-2 at 2-4.] That decision is the final decision of the Commissioner for purposes of judicial review, and Ms. Gilley subsequently sought relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner.

4

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Gilley raises three main arguments on appeal: (1) that the ALJ erred at Steps 4 and 5 by improperly evaluating the severity of Ms. Gilley's fibromyalgia; (2) that the ALJ improperly relied upon misinformation contained in the consultative examiner's report and later relied upon by the state agency doctor; and (3) that the ALJ improperly found Ms. Gilley capable of performing light work, despite the fact that she uses a walking cane. [Filing No. 16 at 3-10.] The Court will address the first and second issues together as they both relate to the ALJ's severity determination, and will address the third issue separately.

### A. The ALJ's Severity Determination

Ms. Gilley argues that the ALJ was incorrect in finding that she could perform some types of work with RFC limitations because the ALJ should have considered her subjective symptoms of pain associated with fibromyalgia. [Filing No. 16 at 3-6.] Ms. Gilley also argues that the ALJ improperly concluded that she was only "partially credible," noting that "[a]ny disability case premised upon the diagnosis of fibromyalgia necessarily entails a credibility finding," and arguing that the ALJ improperly relied upon her ability to undertake activities of daily living in reaching an adverse credibility finding. [Filing No. 16 at 7.] Ms. Gilley also asserts that the ALJ improperly relied upon the opinion of Dr. Nicole Caldwell, later incorporated by Dr. B. Whitley, that Ms.

Gilley had "an 18 of 18 fibromyalgia points, which usually does not point towards fibromyalgia."[4] [Filing No. 16 at 8.] She asserts that this is "misinformation," that Dr. Whitley relied on it in attacking her credibility, and that the ALJ then improperly gave Dr. Whitley's opinion "great weight." [Filing No. 16 at 8-9.]

The Commissioner responds that "this case turns on whether the ALJ's credibility finding was 'patently wrong,'" and argues that here it was not. [Filing No. 19 at 2-3.] The Commissioner argues that the ALJ properly relied on the report of Dr. Caldwell and the opinion of Dr. Whitley in finding that Ms. Gilley's symptoms were not as limiting as she claimed. [Filing No. 19 at 3.] The Commissioner cites to medical records indicating that both Dr. Caldwell and Dr. Whitley questioned Ms. Gilley's credibility, and notes that Ms. Gilley did not cite to any evidence undermining their opinions. [Filing No. 19 at 4-5.] The Commissioner asserts that the ALJ did not ignore objective medical evidence, but rather considered and rejected it based on the medical opinions concluding that Ms. Gilley was exaggerating her symptoms. [Filing No. 19 at 5-6.] As for her activities of daily living, the Commissioner argues that Ms. Gilley's daily activities "far exceeded simple housework" since they involved "car[ing] for her disabled husband and four disabled or special-needs grandchildren." [Filing No. 19 at 7.] The Commissioner contends that the ALJ pointed to Ms. Gilley's activities of daily living to show that she was not as physically limited as she claimed, and not "as proof she was de facto not disabled and could hold a job." [Filing No. 19 at 7-8.] Further, the Commissioner argues that "the ALJ assessed [Ms.] Gilley's symptoms in light of the medical opinions, [her] other exaggerated claims, modest clinical

---

[4] "Fibromyalgia is typically diagnosed by a showing of pain in 11 of 18 specified tender-point sites. Pain is assessed on a four-point scale, with two points indicating moderate or greater pain." *Denton v. Astrue*, 596 F.3d 419, 421 (7th Cir. 2010) (citing Frederick Wolfe, et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee*, 33 ARTHRITIS & RHEUMATISM 160 (1990)).

findings, and a limited and conservative course of treatment, in addition to her daily activities." [Filing No. 19 at 8.] The Commissioner argues that Dr. Whitley questioned Ms. Gilley's credibility *because* she tested positive for 18 out of 18 fibromyalgia points, and that though Dr. Whitley and Dr. Caldwell both agreed that Ms. Gilley had fibromyalgia, "they both thought it unlikely that [Ms.] Gilley tested positive in 18 out of 18 tender points, particularly in light of other evidence of [Ms.] Gilley's exaggerated presentation." [Filing No. 19 at 4-5.]

Fibromyalgia, which is a rheumatic disease, cannot be confirmed by objective laboratory tests. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003) (citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). But "[a] distinction exists…between the amount of fatigue or pain an individual experiences, which as *Hawkins* notes is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 770 (7th Cir. 2010) (quoting *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007)).

Accordingly, it is not enough that Ms. Gilley has been diagnosed with fibromyalgia. *See Hawkins*, 326 F.3d at 916 ("'Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the claimant] is one of the minority'") (quoting *Sarchet*, 78 F.3d at 306-07). The correct analysis is whether the evidence regarding Ms. Gilley's subjective pain limits her objective functional capabilities. *Holmstrom*, 615 F.3d at 770 ("The district court correctly identified this distinction and focused on it"); *see also Manley v. Barnhart*, 154 Fed. Appx. 532, 536 (7th Cir. 2005) ("[C]laims of disability based on amorphous pain disorders such as…fibromyalgia often must center around the subjective complaints of the patient, since they have few objective indicators….But the severity

7

of these disorders varies, and the claimant's subjective complaints need not be accepted insofar as they clash with other evidence in the record"); *Kurth v. Astrue*, 568 F.Supp.2d 1020, 1032-33 (W.D. Wis. 2008) ("[S]ubjective complaints in [a fibromyalgia] case are more important than in other cases because they are clinical indicators of the disease of fibromyalgia"); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (A fibromyalgia diagnosis is insufficient to show a person is disabled – the fibromyalgia must also be severe). Thus, the credibility determination in a case involving fibromyalgia is particularly important.

The ALJ's credibility determination is typically entitled to special deference. *Scheck*, 357 F.3d at 703; *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ summarized Ms. Gilley's complaints, and noted that Dr. Steven Gatewood found she "had weak grip, decreased head and neck movement, and shoulder pain with extension and prescribed medication." [Filing No. 13-2 at 21.] The ALJ also noted, however, that Ms. Gilley's x-rays showed only mild degeneration and that she had "full range of motion in her extremities"

8

and "good range of motion in her spine and shoulders…." [Filing No. 13-2 at 21.] The ALJ went on to discuss Ms. Gilley's credibility, but did not specifically tie it to her consideration of whether Ms. Gilley's fibromyalgia would prevent her from performing light work. She stated that she found Ms. Gilley to be "partially credible," and noted that Dr. Whitley opined that Ms. Gilley could perform light work with some limitations and that Ms. Gilley was able to care for her disabled spouse and young, disabled children, do occasional household chores, shop, attend medical appointments, attend church, and visit with family and friends. [Filing No. 13-2 at 23.]

The ALJ must build a logical bridge from the record to her conclusion, *Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014)*, and she has not done so here. Her opinion contains many conclusions, but very few explanations for those conclusions. And while the Commissioner has detailed evidence from the record in arguing that the ALJ properly concluded that Ms. Gilley could perform light work, this detail is completely lacking in the ALJ's opinion. *See Hanson v. Colvin, 760 F.3d 759, 762 (7th Cir. 2014)* ("[*Securities and Exchange Commission v.*] *Chenery* [*Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)*]* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself") (citation omitted). For example, the ALJ cited to certain medical records, but did not explain which parts of those records support her conclusion that Ms. Gilley is only partially credible. [Filing No. 13-2 at 23.]

As for the ALJ's reliance on Dr. Whitley's opinion, which references the 18 out of 18 fibromyalgia score, the Commissioner again provides far more detail in her response brief than the ALJ did in her opinion. The ALJ merely stated that she gave Dr. Whitley's opinion "great weight," but did not specifically explain why she did so, only generically stating that "the evidence received into the record, after the initial determination, did not provide any new or material information that

9

would alter any findings about the claimant's residual functional capacity." [Filing No. 13-2 at 24.] She did not explain whether she interpreted Dr. Caldwell's notation that Ms. Gilley "had an 18 out of 18 fibromyalgia points, which usually does not point towards fibromyalgia" to mean that Ms. Gilley must have been malingering because, for example, it is very rare for someone to score an 18 and indicates that she was exaggerating her symptoms. Indeed, the ALJ did not mention the 18 out of 18 score at all.

The Court notes that even with an 18 out of 18 score, it is entirely possible that the ALJ still could have properly found that Ms. Gilley was not disabled. *See, e.g., Thompson v. Colvin, 575 Fed. Appx. 668, 677 (7th Cir. 2014)* (affirming denial of benefits where claimant scored a 17 out of 18 on fibromyalgia test but had no other pain issues and ALJ concluded that claimant had fibromyalgia, but that it was not debilitating and would not preclude sedentary work); *Castile v. Astrue, 617 F.3d 923, 929-30 (7th Cir. 2010)* (affirming denial of benefits where claimant had 18 out of 18 tender points on fibromyalgia test and "ALJ reasonably concluded that [claimant's] litany of alleged pain and other symptoms were 'not entirely credible' insofar as establishing proof of her inability to work," and noted that no doctor had found she could not work). But the ALJ's failure to discuss the 18 out of 18 score further highlights the lack of detail in the ALJ's opinion and, thus, the lack of a logical bridge from the evidence to the ALJ's conclusion.

The Court's own review of the evidence indicates that there is significant evidence of malingering by Ms. Gilley which could support a denial of benefits, but it is not the Court's role to assess the records on its own. Rather, the Court must determine whether the ALJ has built a logical bridge from the evidence to her conclusion – she has not here. Accordingly, this matter must be remanded for further explanation from the ALJ.

The Court does find, however, that the ALJ's reliance on Ms. Gilley's ability to perform certain activities of daily living was not *per se* improper. The ALJ noted that Ms. Gilley is "able to care for young disabled children at home as well as a disabled spouse," and that she can do occasional household chores, and can shop, attend medical appointments, attend church, and visit with family and friends." [Filing No. 13-2 at 23.] These abilities – particularly the ability to care for her disabled husband and grandchildren – support the ALJ's finding that Ms. Gilley's symptoms were not as severe as she claimed, and the ALJ's reliance on those abilities as part of her credibility analysis was not improper. The ALJ must ensure on remand, though, that she does not rely too heavily on Ms. Gilley's activities of daily living in conducting her credibility analysis. *See Flint v. Colvin*, 543 Fed. Appx. 598, 599 (7th Cir. 2013) (ALJ "properly noted the inconsistency between, on the one hand, [the claimant's] testimony that she was able to care full-time for her husband and perform some household chores and, on the other hand, her claim that her pain and other symptoms prevented her from working"); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility[, but] this must be done with care"); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons…, and is not held to a minimum standard of performance, as she would be by an employer").

In sum, the Court finds that the ALJ did not adequately explain her conclusion that Ms. Gilley is able to perform light work despite her fibromyalgia diagnosis. Specifically, she did not detail her conclusion that Ms. Gilley was only "partially credible." As noted above, there appears to be evidence in the record to support the ALJ's ultimate conclusion that Ms. Gilley's complaints

regarding the severity of her fibromyalgia symptoms were not entirely credible. If the ALJ had cited and discussed that evidence, her conclusion might very well have been justified. However, her opinion leaves the Court to guess regarding how she reached her conclusion, which the Court will not and cannot do. Accordingly, this case must be remanded for the ALJ to sufficiently explain her conclusion regarding Ms. Gilley's credibility.

### B. Ms. Gilley's Use of a Cane

Ms. Gilley argues that the vocational expert testified that Ms. Gilley "would grid out at age 50 [and automatically be considered disabled] if she required the use of a cane," and that she turned 50 a few months before the date she was last insured. [[Filing No. 16 at 9-10](#).] She asserts that "[e]ven if the ALJ was justified in concluding that the plaintiff was not disabled prior to the plaintiff's 50th birthday, the fact that she was prescribed and used a cane before her 50th birthday combined with the testimony of the vocational expert clearly demonstrates that the plaintiff was incapable of doing light work and should have been found disabled at least as of her 50th birthday." [[Filing No. 16 at 10](#).]

The Commissioner responds that the ALJ reasonably found that Ms. Gilley did not need a cane to work, and properly relied upon Dr. Whitley's opinion which "ultimately concluded that [Ms. Gilley] could work without using [a cane]." [[Filing No. 19 at 9](#).]

There is a fundamental problem with the Commissioner's response: the ALJ never concluded that Ms. Gilley did not need a cane to work. Rather, she simply noted that Dr. Caldwell found "positive malingering with normal gait and ability to squat with use of a cane." [[Filing No. 13-2 at 22](#); [Filing No. 13-2 at 24](#).] Indeed, Dr. Whitley never even concluded that Ms. Gilley could work without a cane. She noted that Dr. Frappier had prescribed "a straight cane to prevent falls," that Ms. Gilley "walks w/ rt-sided limp and uses cane," that she "had a normal pace w/out use of

12

[cane] outside of exam room," and that "[t]here is medical evidence from treating sources that substantiate the clmt's use of a cane." [Filing No. 14-4 at 109-110; Filing No. 14-4 at 113.] But Dr. Whitley did not ever state that Ms. Gilley does not need a cane. While her conclusion that Ms. Gilley can perform light work and is able to occasionally climb, stoop, kneel, crouch, and crawl may imply that Ms. Gilley does not need a cane, [*see* Filing No. 14-4 at 110], Dr. Whitley did not ever explicitly say so. Similarly, the ALJ never concluded that Ms. Gilley did not need a cane to work. To the extent the ALJ had concluded that Ms. Gilley did not need a cane in determining that Ms. Gilley could perform light work, she was required to explain that conclusion. And to the extent the ALJ believed Ms. Gilley could still perform light work with a cane, she was required to expound on that as well. Like her discussion of Ms. Gilley's fibromyalgia, the ALJ's consideration of Ms. Gilley's use of a cane is missing important details. While evidence may exist in the record to properly conclude that Ms. Gilley does not need a cane to work, or can perform light work with a cane, the ALJ must discuss that evidence and more clearly set forth her conclusion.

Ms. Gilley also argues that the vocational expert testified that Ms. Gilley would "grid out at age 50 if she required the use of a cane." [Filing No. 16 at 10.] The Commissioner did not specifically respond to this argument. The vocational expert testified that if Ms. Gilley used a cane she would qualify only for sedentary work, and that even sedentary positions would not be available to her as of her fiftieth birthday. [Filing No. 13-2 at 68-69.] Accordingly, to the extent that the ALJ did not conclude that Ms. Gilley could work without her cane, she should have explained why Ms. Gilley qualified for light work instead of sedentary work, and what effect, if

13

any, attaining the age of fifty would have on the disability analysis.[5]

## IV.
### CONCLUSION

The ALJ's opinion lacks the specificity required, and the Court cannot tell why she discounted Ms. Gilley's fibromyalgia symptoms, and whether she concluded that Ms. Gilley did not need a cane to work. Again, there is evidence in the record regarding Ms. Gilley's credibility that may well justify the ALJ's ultimate conclusion that Ms. Gilley is not entitled to benefits. But the ALJ must build a logical bridge between that evidence and her conclusion. Because she has not done so, the Court **VACATES** the ALJ's decision denying Ms. Gilley benefits and supplemental security income and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

November 13, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[5] As Ms. Gilley notes, SSR 12-2p became effective shortly after the ALJ's decision at issue here. [Filing No. 16 at 3.] SSR 12-2p primarily "provides guidance on how [to] develop evidence to establish that a person has a medically determinable impairment of fibromyalgia." SSR 12-2p. To the extent it also addresses determining the RFC of an individual suffering from fibromyalgia, the ALJ should consider SSR 12-2p on remand.